# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CORY J. DUNN, *et al.*, | : | NO. 3:25-CV-01746 |
| Plaintiffs, | : | |
| | : | (SAPORITO, D.J.) |
| v. | : | |
| | : | (CAMONI, M.J.) |
| LUZERNE COUNTY CHILDREN | : | |
| & YOUTH SERVICES, *et al.* | : | |
| Defendants. | : | |

## <u>REPORT AND RECOMMENDATION</u>

After granting Plaintiffs Cory Dunn and Samantha Care's motion for leave to proceed *in forma pauperis*, the Court conducted a preliminary review of the operative Amended Complaint (doc. 5),[1] noted deficiencies, and directed the Plaintiffs to file a second amended complaint. October 21, 2025, Order, doc. 8.

The Plaintiffs have not filed a second amended complaint. Based on the Court's preliminary review pursuant to 28 U.S.C. § 1915(e), and having afforded the Plaintiffs an opportunity to correct the deficiencies in the Amended Complaint which they have failed to do, the undersigned

---

[1] After the Court noted that the Plaintiffs did not sign the original complaint (doc. 1) and failed to submit an IFP application for Plaintiff Samantha Care (Sept. 23, 2025, Order, doc. 4), the Plaintiffs filed the Amended Complaint.

respectfully recommends that the Court dismiss the Amended Complaint with prejudice.

## I.   BACKGROUND

The Plaintiffs, Cory Dunn and Samantha Care, initiated this *pro se* civil rights case against the following Defendants:

1. Luzerne County Children & Youth Services ("LCCYS");

2. Joanne Van Saun, LCCYS director;

3. Kelly Vaxmonsky, LCCYS supervisor;

4. Melissa Conrad, LCCYS caseworker;

5. Brian Steve, LCCYS supervisor;

6. Brian Edwards, LCCYS caseworker; and

7. Tiffany Crispell, guardian ad litem.

Amended Complaint, Doc. 5 at 2–4, 10.

The Plaintiffs allege the following facts, which the Court takes as true for the purposes of screening a pro se complaint pursuant to § 1915(e)(2): Between 2016 and 2023, LCCYS commenced various enforcement actions against the Plaintiffs including "the filing of a coerced Protection From Abuse (PFA) order, . . . removal and placement of the minor children, . . . with ongoing violations occurring during court

hearings and agency actions . . . ." Doc. 5 at 12. As a result, the Plaintiffs suffered emotional distress and sustained financial injuries. *Id.* at 13.

On September 26, 2025, the Plaintiffs filed the operative Amended Complaint (doc. 5). The Court granted the Plaintiffs' applications (docs. 2, 6) to proceed *in forma pauperis.* October 6, 2025, Order, doc. 7. The Plaintiffs allege six constitutional violations under 42 U.S.C. § 1983: (1) Fourteenth Amendment Due Process; (2) First Amendment Retaliation and Freedom of Association; (3) Fourth Amendment Unlawful Seizure; (4) Eighth Amendment Cruel and Unusual Punishment; (5) Fourteenth Amendment Equal Protection; and (6) *Monell* liability. Doc. 5 at 8-9. The Plaintiffs request declaratory and injunctive relief, as well as compensatory and punitive damages. *Id.* at 14-15.

## II.   LEGAL STANDARD FOR SCREENING COMPLAINTS FILED IN FORMA PAUPERIS

This Court has a statutory obligation to conduct a preliminary review of *pro se* complaints brought by litigants given leave to proceed *in forma pauperis.* Specifically, the Court is obliged to review the complaint in accordance with 28 U.S.C. § 1915(e)(2), which provides, in pertinent part:

(2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that –

    (A) the allegation of poverty is untrue; or

    (B) the action or appeal--

        (i) is frivolous or malicious;

        (ii) fails to state a claim on which relief may be granted; or

        (iii) seeks monetary relief against a defendant who is immune from such relief.

In performing this mandatory screening function, the Court applies the same standard that is used to evaluate motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The United States Court of Appeals for the Third Circuit has observed the evolving standards governing pleading practice in the federal courts, stating that "pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 209-10 (3d Cir. 2009). "[A] complaint must do

more than allege the plaintiff's entitlement to relief." *Id.* at 211. It also "has to 'show' such an entitlement with its facts." *Id.*

To test the sufficiency of the complaint under Rule 12(b)(6), the court must conduct the following three-step inquiry:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." [*Ashcroft v.*] *Iqbal,* 129 S.Ct. [1937,] 1947 [(2009)]. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.*

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).

A complaint filed by a *pro se* litigant is to be liberally construed and 'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007), quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Even a *pro se* complaint

must recite factual allegations that are enough to raise the Plaintiff's claimed right to relief beyond the level of mere speculation.

## III.  ANALYSIS

The Amended Complaint fails to state a claim for which relief may be granted because: (1) it invites this Court to undo what a state court has done; (2) it attempts to bring claims that are barred by the statute of limitations; (3) it implicates Defendants who are immune; and (4) it contains bare legal conclusions and factually unsupported accusations that merely recite that the Defendants unlawfully harmed the Plaintiffs. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Because the Plaintiffs have been afforded an opportunity to correct these deficiencies (doc. 8), and have failed to do so, the undersigned respectfully recommends that the Court dismiss the Amended Complaint (doc. 5) with prejudice.

### A.  The *Rooker-Feldman* Doctrine

To begin with, the Court cannot grant the relief the Plaintiffs seek (doc. 5 at 14-15) because it would require undoing what a state court has done. To the extent the Plaintiffs seek to nullify the outcome of a completed state court proceeding, a portion thereof, or any order of a state

court by suing LCCYS and its employees for the initiation of those proceedings, this Court cannot act as a pseudo-court of appeals, reviewing and reversing state court decisions. Because the Plaintiffs urge the Court, in effect, to sit as a state appellate court and vacate prior state court rulings, their Amended Complaint encounters an insurmountable legal obstacle at the threshold. This Court lacks subject matter jurisdiction over these claims, which necessarily invite this federal court to review, re-examine, and reject state court rulings in a state child custody case.

Under the *Rooker-Feldman* doctrine, federal district courts must decline such invitations:

> That doctrine takes its name from the two Supreme Court cases that gave rise to the doctrine. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L. Ed. 2d 362, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine is derived from 28 U.S.C. § 1257 which states that "[f]inal judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme Court...." *See also Desi's Pizza, Inc. v. City of Wilkes Barre*, 321 F.3d 411, 419 (3d Cir.2003). "Since Congress has never conferred a similar power of review on the United States District Courts, the Supreme Court has inferred that Congress did not intend to empower District Courts to review state court decisions." *Desi's Pizza*, 321 F.3d at 419.

*Gary v. Braddock Cemetery*, 517 F.3d 195, 200 (3d Cir. 2008).

Page 7 of 25

Because federal district courts are not empowered by law to sit as reviewing courts, reexamining state court decisions, "[t]he *Rooker-Feldman* doctrine deprives a federal district court of jurisdiction in some circumstances to review a state court adjudication." *Turner v. Crawford Square Apartments III, LLP*, 449 F.3d 542, 547 (3d Cir.2006). Cases construing this jurisdictional limit on the power of federal courts have quite appropriately:

> emphasized the narrow scope of the *Rooker-Feldman* doctrine, holding that it "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." [E*xxon Mobil Corp. v. Saudi Basic Industries Corp*.], 544 U.S. at 284, 125 S.Ct. at 1521-22, 161 L. Ed. 2d 454; *see also Lance v. Dennis*, 546 U.S. 459, 126 S.Ct. 1198, 1201, 163 L.Ed.2d 1059 (2006).

*Id.*

In *Centifanti v. Nix*, 865 F.2d 1422 (3d Cir. 1989), the Third Circuit, quoting Justice Marshall in *Pennzoil v. Texaco, Inc.*, 481 U.S. 1 (1987), provided guidance in determining when a constitutional claim is "inextricably intertwined" with the particular decision of a state court for purposes of barring the district court's jurisdiction to hear the case under the *Rooker-Feldman* doctrine:

> While the question of whether a federal constitutional challenge is inextricably intertwined with the merits of a state court judgment may sometimes be difficult to answer, it is apparent, as a first step, that the federal claim is inextricably intertwined with the state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court proceeding was wrong, it is difficult to conceive that the federal proceeding as, in substance, anything other than a prohibited appeal of the state court judgment.

*Centifanti*, 865 F.2d at 1430 (Marshall, J., concurring), quoting *Pennzoil*, 481 U.S. at 25; *accord*, *FOCUS v. Allegheny Cnty. Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir. 1996) (finding plaintiff's federal constitutional claim inextricably intertwined with the state court decision "if the relief requested in the federal action requires determining that the state court decision is wrong or would void the state court's ruling. . . ."), quoting *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995).

This is especially true here, where the Plaintiffs ask this Court to interfere with a state court adjudication of child custody matters, which the federal courts have no jurisdiction over. The domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees," *Ankenbrandt v. Richards*, 504 U.S. 689, 703

(1992), because it has long been settled that "[t]he whole subject of the domestic relations of husband and wife . . . belongs to the laws of the states, and not to the laws of the United States," *Ex parte Burrus*, 136 U.S. 586, 593–94 (1890); *see also Daniels v. Cynkin*, 34 F. Supp. 3d 433, 441 (D.N.J. 2014), *aff'd*, 597 F. App'x 704 (3d Cir. 2015).

Here, in addition to damages based on emotional distress, the Plaintiffs ask this Court to "declar[e] that Defendants' actions, polices, and practices violated Plaintiffs' constitutional rights . . . including the right to familial integrity," and to "order . . . [LCCYS] . . . to cease and desist from unlawful interference with Plaintiffs' custody and parental rights." Doc. 5 at 14. Granting such relief would require this Court to review and invalidate state court findings related to LCCYS and its employees' enforcement actions which led to the removal of the Plaintiffs' children. *Id.* at 12. The *Rooker-Feldman* doctrine prohibits such actions and deprives this Court of jurisdiction over the Plaintiffs' claims.

The undersigned recognizes that the Plaintiffs' state court dependency hearing has not progressed as they wished, they feel unjustly alienated from their children, and they seek this Court's intervention to provide compensation. But the Plaintiffs have every opportunity to seek

such relief in the state court and to pursue appellate review of any adverse rulings. It is in that forum and through that process that the Plaintiffs' claims may be heard without unwarranted interference from this Court. This Court is precluded, therefore, from providing the Plaintiffs with any of their requested relief. For these reasons, the Amended Complaint is deficient under *Rooker-Feldman*. *See Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 163-64 (3d Cir. 2010).

### B.    Statute of Limitations for § 1983 claims

The Plaintiffs' claims under § 1983 are also be barred by the statute of limitations. A statute of limitations creates "a time limit for suing in a civil case, based on the date when the claim accrued." *CTS Corp. v. Waldburger*, 573 U.S. 1, 7 (2014), quoting Black's Law Dictionary 1546 (9th ed. 2009). "Actions brought under 42 U.S.C. § 1983 are governed by the personal injury statute of limitations of the state in which the cause of action accrued." *O'Connor v. City of Newark*, 440 F.3d 125, 126 (3d Cir. 2006). In Pennsylvania, 42 Pa. Cons. Stat. Ann. § 5524 governs, providing for a two-year statute of limitations. *Sameric Corp. of Del., Inc. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998). While state law governs

the limitations period, federal law governs the date of accrual of § 1983 claims. *See Motgomery v. De Simone,* 159 F.3d 120, 126 (3d Cir. 1998). "[T]he limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action." *Id.*, quoting *Genty v. Resolution Tr. Corp.*, 937 F.2d 899, 919 (3d Cir. 1991).

Here, the Plaintiffs' § 1983 claims are based on events that happened in 2016 and 2017, more than seven years before the Plaintiffs filed this action in 2025. *See* doc. 5 at 12. For Plaintiffs' § 1983 claims to come within the two-year statute of limitations period, the Plaintiffs' factual allegations that form the basis of their § 1983 action would have to have occurred on or after September 26, 2023—within two years before the date the Plaintiffs filed this action. *See* doc. 5. Because the Plaintiffs fail to allege any facts that fall within that two-year period, the Plaintiffs' § 1983 claims are barred by the statute of limitations.

## C.    **Immunity**

As the Court of Appeals has found, "CYS defendants are entitled to absolute immunity for their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings." *Ernst v. Child*

*& Youth Servs.*, 108 F.3d 486, 495 (3d Cir. 1997); *Billups v. Penn State Milton S. Hershey Med. Ctr.*, 910 F. Supp. 2d 745, 765 (M.D. Pa. 2012) (citation modified) ("This immunity extends to the formulation and presentation of recommendations to the court in the course of such proceedings").

Here, the Plaintiffs challenge the "initial false allegations and coercion occurring on December 16–17, 2016," and the "[s]ubsequent actions, including coercion to sign a safety plan, the filing of a coerced Protection From Abuse (PFA) order, and the subsequent removal and placement of the minor children, continued from January 2017, with ongoing violations occurring during court hearings and agency actions . . . ." Doc. 5 at 12. The Plaintiffs are challenging the LCCYS Defendants' actions in initiating and prosecuting dependency proceedings on behalf of the state, and so the LCCYS Defendants "are entitled to absolute immunity." *Ernst*, 108 F.3d 495. Further, any "violations occurring during court hearings" (doc. 5 at 12) may also fall under the LCCYS Defendants' immunity if they concern the "formulation and presentation of recommendations to the court in the course of [dependency] proceedings." *Billups*, 910 F. Supp. 2d at 765.

The Plaintiffs also name as a defendant Tiffany Crispell, guardian ad litem. Doc. 5 at 5. Because the Plaintiffs fail to plead any specific allegations against Defendant Crispell, the Court cannot determine what role Defendant Crispell had in the Plaintiffs' constitutional claims. Liberally construing the Amended Complaint, however, the Court understands the Plaintiffs' allegations as to "ongoing violations occurring during court hearings," (*id.* at 12), to involve Defendant Crispell in her capacity as a guardian ad litem. Under that reading, the Plaintiffs' claims against Defendant Crispell are barred by judicial immunity. *See Hughes v. Long*, 242 F.3d 121, 127 (3d Cir. 2001), citing *Gardner v. Parson*, 874 F.2d 131, 146 (3d Cir. 1989) ("A guardian ad litem would be immune in exercising such functions as . . . making reports and recommendations to the court in which the guardian acts as an actual functionary or arm of the court.").

Additionally, each count of the Plaintiffs' allegations of constitutional violations fails to state a claim on which relief can be granted, which the undersigned addresses in turn.

Page 14 of 25

### D.   Count One: Fourteenth Amendment Due Process

First, the Plaintiffs allege that the Defendants removed the Plaintiffs' children without a lawful court order, and failed to provide adequate notice, hearings, and procedural safeguards. Doc. 5 at 8. The Due Process Clause of the Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1; *Morrow v. Balaski*, 719 F.3d 160, 166 (3d Cir. 2013). "To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a person acting under color of state law engaged in conduct that violated a right protected by the Constitution or laws of the United States." *Morrow*, 719 F.3d at 165–66 (3d Cir. 2013), citing *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000).

Here, the Plaintiffs have alleged that the Defendants, LCCYS and its employees, deprived her of due process, but fail to explain who did what and how the Plaintiffs were deprived of due process. They allege, in conclusory fashion, that the Defendants acted under color of law by "remov[ing] Plaintiffs' children without a lawful court order, based on knowing false or fabricated allegations," (doc. 5 at 8), but allege no facts

to support that allegation.[2] In fact, the Plaintiffs allege that violations occurred "during court hearings . . . until the case concluded in 2023." Doc. 5 at 12. At minimum, it appears that the Plaintiffs were, in fact, afforded the due process of multiple court hearings. Even construing the Plaintiffs' *pro se* Amended Complaint broadly, the undersigned cannot determine which of the Plaintiffs' due process rights were violated or how.

### E.    Count Two: First Amendment Retaliation and Freedom of Association

The Plaintiffs also allege that they were "retaliated against for asserting their rights, including objecting to unlawful CYS actions, seeking legal remedies, and attempting to expose misconduct. The interference with Plaintiffs' ability to freely associate with their own children and family constitutes a violation of their First Amendment rights." Doc. 5 at 8.

To state a First Amendment retaliation claim, a plaintiff must allege: (1) a constitutionally protected conduct; (2) a retaliatory action

---

[2] Broadly speaking, the Amended Complaint is replete with "bare legal conclusions or factually unsupported accusations that merely state the Defendants unlawfully harmed the plaintiff[s]," of the type this Court is directed to discard. *Iqbal*, 556 U.S. at 678.

sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) a causal link between the constitutionally protected conduct and the retaliatory action. *Thomas v. Independence Township*, 463 F.3d 285, 296 (3d Cir. 2006), citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir.2003). Here, similar to their other claims, the Plaintiffs fail to allege who took any retaliatory actions and what those actions were. The Amended Complaint contains bare legal conclusions and factually unsupported accusations that merely state that the Defendants unlawfully harmed the Plaintiffs. *See Iqbal*, 556 U.S. at 678.

The same analysis applies to the Plaintiffs' freedom of association claim. "First Amendment freedom of association includes the right to intimate association." *Behm v. Luzerne Cnty. Children & Youth Policy Makers*, 172 F. Supp. 2d 575, 585 (M.D. Pa. 2001), citing *Roberts v. U.S. Jaycees*, 468 U.S. 609, 615 (1984). The Third Circuit has recognized that "family relationships are the paradigmatic form of protected intimate associations, as they 'by their nature involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences and beliefs but also distinctively personal aspects of one's life.'" *Pi Lambda Phi*

*Fraternity, Inc. v. Univ. of Pittsburgh*, 229 F.3d 435, 441-42, quoting *Roberts*, 468 U.S. at 619-20.

"While the right to intimate association is not absolutely protected from state regulation, state regulation of intimate association is subject to strict scrutiny." *Behm*, 172 F. Supp 2d at 585. "The defendant must show that: (1) the state action serves a compelling state interest which (2) cannot be achieved through means significantly less restrictive of one's associational freedom." *See id.* (citation modified). The Defendants here have a compelling state interest in protecting children. *See id.*, citing *Croft v. Westmoreland Cnty. Children & Youth Servs.*, 103 F.3d 1123, 1125 (3d Cir. 1997).

Further, while the Court acknowledges that "Plaintiffs' right to intimate association is clearly implicated," *id.*, the Plaintiffs merely allege, in a conclusory manner, that the Defendants' "interference with Plaintiffs' ability to freely associate with their own children and family constitutes a violation of their First Amendment rights." Doc. 5 at 8. Without more, the Court cannot determine what those alleged interferences were or who allegedly interfered with the Plaintiffs' rights. *See also Ciprich v. Luzerne County*, No. 15-2364, 2017 WL 3709075, at *6

(M.D. Pa. Aug. 28, 2017) (finding that a plaintiff-parent failed to adequately plead a First Amendment freedom of association claim where the plaintiff's claims were conclusory and failed to set facts demonstrating how removal of the plaintiff's children were unjustified).

### F.    Count Three: Fourth Amendment Unlawful Seizure

The Plaintiffs next allege that the "Defendants unlawfully seized the Plaintiffs' minor children without probable cause or exigent circumstances, constituting an unreasonable seizure under the Fourth Amendment." Doc. 5 at 8. The Plaintiffs' legal conclusions are without factual support. As pleaded, the Amended Complaint fails to state what acts from which of the Defendants caused the Plaintiffs harm. Further, the Court finds that the allegedly unconstitutional removal of the Plaintiffs' children occurred following state proceedings which this Court must refrain from reviewing. *See id.* at 12 ("Subsequent actions, including . . . sign[ing] a safety plan, the filing of a coerced Protection From Abuse (PFA) order, . . . with ongoing violations occurred during court hearings . . . until the case concluded in 2023."). As it stands, the Amended Complaint fails to sufficiently state a Fourth Amendment violation, and what little is pled isbarred by *Rooker-Feldman*.

### G.   Count Four: Eighth Amendment Cruel and Unusual Punishment

The Plaintiffs' Eight Amendment claim fails as a matter of law. The Eighth Amendment "was designed to protect those convicted of crimes and consequently the Clause applies only after the State has complied with constitutional guarantees traditionally associated with criminal prosecutions." *Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005), quoting *Whitley v. Albers*, 475 U.S. 312, 318 (1986). Here, the Plaintiffs do not allege that they have been convicted of or sentenced for crimes. As such, the Plaintiffs' Eighth Amendment claim is frivolous. *See Voorhis v. Digangi*, No. 23-66, 2024 WL 4479831, at *6 (W.D. Pa. Aug. 12, 2024), citing *Hubbard*, 399 F.3d at 164 ("The Eighth Amendment's prohibition against cruel and unusual punishment does not apply outside of the prison sentence and conviction.").

### H.   Count Five: Fourteenth Amendment Equal Protection Claim

The Plaintiffs next claim that they were "treated differently than similarly situated parents . . . in part due to favoritism toward Stephanie Lennon (maternal grandmother) and her relationship with individuals connected to Luzerne County CYS." Doc. 5 at 8. The Plaintiffs allege no

Page 20 of 25

facts to support a reasonable inference of a violation of the Plaintiffs' rights under the equal protection clause.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It directs that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985), citing *Plyer v. Doe*, 457 U.S. 202, 216 (1982). To state a claim for a violation of equal protection, a plaintiff must allege that a defendant's actions had a discriminatory effect and were motivated by discriminatory purpose. *Bradley v. United States*, 299 F.3d 197, 205 (3d Cir. 2002). "Establishing discriminatory effect requires showing that a plaintiff is a member of a protected class and that he was treated differently from similarly situated individuals in an unprotected class, to whom he is alike 'in all relevant aspects.'" *Doe v. Williamsport Area Sch. Dist.*, 699 F. Supp. 3d 306, 323 (M.D. Pa. 2023), quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 271 (3d Cir. 2014).

Here, the Plaintiffs fail to allege sufficient facts to indicate whether they are members of a protected class, or how they were treated

differently from other, similarly situated parents. Plaintiffs again fail to state what acts by which of the Defendants caused the Plaintiffs harm.

## I.      Count Six: *Monell* Claim

The Plaintiffs also bring a *Monell* claim, alleging that Defendant LCCYS:

> maintained customs, policies, and practices that directly led to the violation of Plaintiffs' constitutional rights, including but not limited to: Failing to train and supervise caseworkers adequately. Encouraging the use of false allegations to secure child removals. Suppressing exculpatory evidence (e.g., the Geisinger Wyoming Valley ER doctor's report clearing Plaintiffs of abuse on December 16, 2017). Retaliating against parents who resisted unlawful directives or questioned agency conduct.

Doc. 5 at 9.

Under the Supreme Court's directive in *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), "[w]hen a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996), citing *Monell*, 436 U.S. at 658.

Here, the Plaintiffs' *Monell* claim fails because, as the Court finds above, the Plaintiffs fail to establish their underlying constitutional claims. A suit under § 1983 does not itself create any substantive right. *See, e.g., Gonzaga Univ. v. Does*, 536 U.S. 273, 285 (2002). And "without an underlying constitutional violation, there can be no *Monell* claim." *Knellinger v. York St. Prop. Dev., LP*, 57 F. Supp. 3d 462, 471 (E.D. Pa. 2014); *see also City of Los Angeles v. Heller*, 475 U.S. 796 (1986) ("If a person has suffered no constitutional injury . . . , the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point."). The Plaintiffs, therefore, fail to state a *Monell* claim.

## IV.    LEAVE TO AMEND

The Third Circuit instructs this Court to grant leave to amend when an *in forma pauperis* plaintiff has filed a complaint subject to dismissal under Rule 12(b)(6), unless amendment would be inequitable or futile. *Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). In consideration of the Plaintiffs' status as a *pro se* litigant, they were given a chance to correct deficiencies in their pleadings. Doc. 8. The Plaintiffs, however, failed to

cure those defects and the Amended Complaint (doc. 5) failed to present any viable claims. For the reasons explained here, it would be futile to permit the Plaintiffs to amend once more. The undersigned, therefore, respectfully recommends that the Court dismiss the Amended Complaint with prejudice.

## V. RECOMMENDATION

Accordingly, the undersigned respectfully recommends that:

(1) The Amended Complaint (doc. 5), be **DISMISSED** with prejudice; and

(2) The Clerk of Court be **DIRECTED** to **CLOSE** this case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the

magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses, or recommit the matter to the magistrate judge with instructions

Date: May 27, 2026                                          s/ *Sean A. Camoni*
                                                            Sean A. Camoni
                                                            United States Magistrate Judge